## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

SHIVA STEIN,                                      :
                                                  :
      Plaintiff,                     :   Civil Action No. _____
                                                  :
v.                                                :   **COMPLAINT FOR VIOLATIONS OF**
                                                  :   **SECTIONS 14(a) AND 20(a) OF THE**
PERCEPTRON, INC., JAY W. FREELAND,                :   **SECURITIES EXCHANGE ACT OF**
C. RICHARD NEELY JR., JOHN F.                     :   **1934**
BRYANT, JAMES A. RATIGAN, WILLIAM                 :
C. TAYLOR, and SUJATHA KUMAR,                     :   **JURY TRIAL DEMANDED**
                                                  :
      Defendants.                    :

--------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Perceptron, Inc. ("Perceptron" or the "Company") and the members of Perceptron's board of directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Perceptron by Atlas Copco North America LLC, a Delaware limited liability company ("Atlas"), and Atlas' affiliates.

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 21, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders.  The Proxy

Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Odyssey Acquisition Corp., a direct wholly-owned subsidiary of Atlas ("Merger Sub"), will merge with and into Perceptron, with Perceptron surviving the merger and becoming a direct wholly-owned subsidiary of Atlas (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Perceptron common share issued and outstanding will be converted into the right to receive $7.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Perceptron's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, XMS Capital Partners ("XMS"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Perceptron's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Atlas was formed in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Perceptron common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Jay W. Freeland ("Freeland") has served as a member of the Board since 2018 and as Chairman of the Board since May 2019.  Freeland is also the Company's interim Chief Executive Officer.

11.     Individual Defendant C. Richard Neely Jr. has served as a member of the Board since 2014.

12.     Individual Defendant John F. Bryant has served as a member of the Board since 2016.

13.     Individual Defendant James A. Ratigan has served as a member of the Board since 2016.

14.     Individual Defendant William C. Taylor has served as a member of the Board since 2016.

15.     Individual Defendant Sujatha Kumar has served as a member of the Board since 2019.

16.     Defendant Perceptron is incorporated in Michigan and maintains its principal offices at 47827 Halyard Drive, Plymouth, Michigan 48170-2461. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "PRCP."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

19.     Perceptron develops, produces, and sells various automated industrial metrology products and solutions to manufacturing organizations for dimensional gauging, dimensional inspection, and 3D scanning in Europe, Asia, and the Americas. It provides various in-line and near-line measurement solutions, including AutoGauge, AutoFit, AutoGuide, AccuSite, and Helix engineered metrology systems for industrial automated process control and assembly using fixed and robot mounted laser scanners; and off-line measurement solutions comprising Coord3, coordinate measuring machines, V7 3D laser scanner, and TouchDMIS measuring software for industrial gauging and dimensional inspection using standalone robot mounted laser scanners and coordinate measuring machines. The Company also offers laser-based sensors and software comprising WheelWorks product that targets the digitizing, reverse engineering, inspection, and original equipment manufacturers wheel alignment sectors. In addition, it provides value added

services, including training, field, calibration, launch support, consulting, and repair services, as well as equipment and software maintenance agreements. The Company serves automotive and other manufacturing companies through manufacturing line builders, system integrators, value-added resellers, and original equipment manufacturers. Perceptron was founded in 1981 and is headquartered in Plymouth, Michigan.

20.     On July 16, 2020, Perceptron announced that it entered into a proposed transaction:

PLYMOUTH, Mich., Sept. 28, 2020 (GLOBE NEWSWIRE) -- Perceptron, Inc. (NASDAQ: PRCP), a leading global provider of 3D automated metrology solutions and coordinate measuring machines, today announced that it has entered into a definitive agreement (or the "Agreement") to be acquired by Atlas Copco, a world-leading provider of sustainable productivity solutions headquartered in Stockholm, Sweden, for $7.00 per share. The all-cash transaction values Perceptron at an equity valuation of approximately $68.9 million.

Under the terms of the agreement, Perceptron shareholders will receive $7.00 per share in cash for each share of common stock held. This consideration represents a premium of approximately 66% to the 30-day average closing share price of $4.22 as of September 25, 2020. The Board of Directors has unanimously approved the agreement and recommends that all shareholders vote in favor of the transaction. Harbert Discovery Fund, L.P., Perceptron's largest shareholder with approximately 10.5% of the total shares outstanding, has signed a Voting and Support Agreement in favor of the proposed transaction. The transaction is expected to close during the calendar fourth quarter 2020, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

"Since our inception nearly 40 years ago, Perceptron has grown to become a leading metrology brand, one recognized for its ability to provide advanced flexible automation and quality control solutions to a diverse mix of global customers," stated Jay Freeland, Chairman and Interim CEO of Perceptron. "Atlas Copco recognized the long-term, unrealized value evident in our business, as reflected by a compelling cash offer at a significant premium."

"After careful consideration, our Board of Directors came to the conclusion that a sale of the Company to Atlas Copco would be the optimal outcome for all shareholders and Perceptron employees," continued Freeland. "As a respected, well-capitalized organization with global reach, Atlas Copco is an ideal fit for our company. Atlas Copco's leadership position across a broad array of industrial markets, combined with a growing presence in the machine vision space, will allow them to fully leverage our technology to the benefit of existing and new customers, all while realizing economies of scale with the potential to support growth. We are

excited by the opportunities that lay ahead for our combined organizations and recommend that Perceptron shareholders vote in favor of the Agreement and the transaction."

Perceptron engaged XMS Capital Partners, LLC as its financial advisor, Dykema Gossett PLLC as its legal advisor and Vallum Advisors LLC as its financial communications advisor on this transaction.

\* \* \*

21.     The Board has unanimously approved the Proposed Transaction.  It is therefore imperative that Perceptron's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

22.     On October 21, 2020, Perceptron filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning The Financial Analyses*

23.     With respect to XMS's *Selected Precedent Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by XMS in the analysis; and (ii) the inputs and assumptions underlying the selection of the EV/CY 2021E EBITDA Multiples ranging from 8.0x to 10.0x.

24.     With respect to XMS's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by XMS in the analysis; and (ii) the inputs and assumptions underlying the selection of the EBITDA Multiples ranging from 9.0x to 11.0x.

25.     With respect to XMS's *Offer Price Premia Analysis*, the Proxy Statement fails to disclose the transactions reviewed and analyzed by XMS.

26.     With respect to XMS's *Discounted Cash Flow Analysis*, the Proxy Statement also fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 14.0% to 16.0%; (iii) the inputs and assumptions underlying the use of the range of EBITDA exit multiples of 8.0x to 10.0x; and (iv) the Company's present value of the stand-alone unlevered, after-tax free cash flows for fiscal years ending June 30, 2021 through June 30, 2025.

27.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

28.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

29.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

30.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by XMS and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

31.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

32.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

33.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     The Individual Defendants acted as controlling persons of Perceptron within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Perceptron, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Perceptron, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

36.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

37.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Perceptron, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

38.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

39.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

40.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

41.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 26, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
_____

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*